# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| KIMBERLY COLLINS, ) | Civil Action No.: 2:15-CV-4465-PMD-BM |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | Wrongful Termination in Violation |
| vs. ) | of Public Policy; Violation of |
| ) | Title VII - Termination Based upon Race; |
| CHARLESTON PLACE, LLC, ) | Violation of § 1981 - Termination |
| d/b/a BELMOND CHARLESTON PLACE, ) | Based upon Race |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |
| _____) | |

The plaintiff above named, complaining of the acts of the above-named defendant, states as follows:

## PARTIES AND JURISDICTION

1. That the plaintiff is a resident and citizen of the County of Berkeley, State of South Carolina.

2. That, upon information and belief, the defendant Charleston Place, LLC, d/b/a Belmond Charleston Place ("defendant") is a foreign corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

3. That this court has federal question jurisdiction pursuant to 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-5 ("Title VII"), 42 U.S.C. §1981 ("1981"), and 28 U.S.C. §1331.

4. That venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division, in that pursuant to 28 U.S.C. §1391(b), the parties reside and do business in this district, and a substantial part of the events giving rise to plaintiff's claims occurred here.

1

## CONDITIONS PRECEDENT

5. That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, at all relevant times as defined by Title VII, defendant employed fifteen (15) or more employees. As such, defendant is an "employer" as defined by Title VII and otherwise is subject to that Act.

6. That on or about June 23, 2015, and as result of defendant's discriminatory conduct, all of which is more fully described below, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon race.

7. That on or about August 17, 2015, plaintiff received her Notice of Right to Sue from the EEOC regarding the complaint described above in Paragraph 6.

8. That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received her Notice of Right to Sue described above in Paragraph 7.

## FACTS

9. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 8 hereinabove as fully as if set forth verbatim.

10. That plaintiff is a Caucasian female.

11. That plaintiff was hired by defendant (or its predecessors) back in August of 1987 as a front desk clerk. Over the years plaintiff was promoted at least five (5) times.

12. That most recently, in or around 2006 plaintiff was promoted to the position of Administrative Assistant to Director of Rooms - a position plaintiff occupied until the end of her employment at defendant.

13. That in this position plaintiff reported directly to Paul Stracey ("Stracey"), the General Manager of the hotel.

14. That plaintiff performed her job duties at defendant in an above-satisfactory fashion and otherwise maintained an excellent employment record there. In this regard, in 28 years of employment plaintiff was only disciplined one time - which, upon information and belief, was a verbal warning that plaintiff was given in or around January of 2006 when she had to take several weeks off from work to care for her sick parents. (Plaintiff's mother suffered a massive heart attack and about a week later plaintiff's father had a stroke.) Otherwise, plaintiff received no other discipline by defendant (or its predecessors) and plaintiff always received excellent ratings on her performance evaluations. Indeed, as recently as July of 2014, plaintiff received an "excellent" rating on a performance evaluation and, in or around March of 2015, plaintiff received a $3,600 bonus which was based upon performance.

15. That on or about April 4, 2015, an African-American named Walter Scott was shot and killed by a North Charleston police officer. Thereafter, various forms of protests ensued. As part of this event, Reverend Al Sharpton booked a room at defendant, as he planned to engage in protests and attend Walter Scott's funeral. Upon information and belief, Leon Scott ("Scott"), the Director of Rooms at defendant who is at least part African-American, "comped" Sharpton for one night back in December of 2014 and he had tried to do it again on or about April 10, 2015 for Sharpton's stay in regard to the Walter Scott shooting. Also upon information and belief, Scott and Carol Etheridge ("Etheridge"), defendant's Human Resources Director of North America (who is also African-American), both attended North Charleston Mayor Keith Summey's press conference in regard to the shooting.

16. That during the week after the shooting, Convention Services Managers at the hotel informed plaintiff that customers (or meeting planners) with future reservations were

beginning to express concern about bringing their groups to stay at the hotel because of the potential that protesters would create a hostile or disruptive environment. Indeed, these customers were threatening to cancel reservations which included guest rooms, convention space and banquet food and beverages.

17. That in response, plaintiff authorized the Convention Services Managers to prepare and send letters to the meeting planners reassuring them that guests would not be bothered by protesters. Plaintiff actually helped prepare these letters. And, the letters were approved by Geno Matesi ("Matesi"), the Director of Food and Beverage and Convention Services, before they were sent out.

18. That sometime around Noon on or about Monday, April 13, 2015, plaintiff was sitting at her desk on the second floor of the hotel when she heard loud, sustained voices coming from the first floor. The commotion was being caused by Black Lives Matter protesters who had come to the hotel to protest the Walter Scott shooting. The protesters were chanting in a loud and menacing manner in the lobby of the hotel and then moved into one of the hotel's restaurants, the Palmetto Café, during lunch hour where they continued to protest in a loud manner, disrupting a very busy lunch crowd.

19. That during the protest Matesi approached the protesters and attempted to remove them from the premises, but the protesters would not leave. At the same time, the Director of Security, Shawn Crawford ("Crawford"), who is African-American, failed to take action to deal with the protesters. As such, Matesi had no choice but to call 911. Of course, the entire event scared patrons, guests and employees of defendant and this, in turn, concerned plaintiff.

20. That on or about April 13, 2015, Leon Scott sent an email to a group of management employees at defendant briefly discussing the protest and acknowledging that the

4

protesters had entered the lobby "very loudly." He also acknowledged in the email that the protesters had entered the Palmetto Café "yelling" and trying to hand out flyers. The email ended with Scott expressing his opinion that the protesters were "well guided and respectful. Just loud and disruptive." Mr. Matesi forwarded this email to plaintiff.

21. That on or about Monday, April 13, 2015, plaintiff sat down in the employee cafeteria next to Scott, Crawford and Etheridge. In speaking with Scott, plaintiff leaned toward him and quietly stated that she did not think his April 13, 2015 email was a good idea because it could give the impression the hotel was supporting the protesters' behavior and because the hotel had just sent letters to the meeting planners assuring them there would not be any issues with protesters.

22. That in response, Etheridge stated in an aggressive manner towards plaintiff that the letter defendant sent to the meeting planners was not a good idea and should not have been sent.

23. That the three people at the table were all friends of plaintiff. However, plaintiff felt she was being attacked, as Scott and Etheridge began to aggressively argue with plaintiff about the Walter Scott shooting and the protests. In response, plaintiff expressed her political opinion in regard to the Walter Scott shooting by stating that she did not understand the protesters because the police officer who shot Walter Scott had been quickly arrested, was behind bars and charged with murder. Plaintiff further elaborated that the authorities were acting on the situation in a swift manner; that race relations in the United States had been bad the last seven years; and that this situation (the protests) did not help. Plaintiff also asked Etheridge "What do you want us to do? Tell the convention groups not to come?"

24. That plaintiff then asked Scott why he had "comped" Al Sharpton when it was against company policy. Finally, plaintiff continued to express her political opinions by

5

stating how hard (and courageous) it must have been for the three African-American jurors in the Ferguson, Missouri case to vote against prosecuting a white police officer who shot a black victim/suspect and how counterproductive and divisive it was when an African-American attorney hired to provide diversity training to employees at defendant in January of 2015 brought up the Ferguson case in the course of the training and compared it to Charleston.

25.     That in response, Etheridge aggressively accused plaintiff of not being on her side in the 1990's when protesters were outside of the hotel protesting race issues and when she herself had problems with the black community.  Plaintiff assured Etheridge that she had always supported her.

26.     That two days later, on or about Wednesday, April 15, 2015, Stracey suspended plaintiff for the political opinions plaintiff expressed in the employee lunchroom on or about April 13, 2015.  To this end, Stracey told plaintiff that he was suspending her for what she said in the cafeteria and that, had plaintiff just told Scott his email was misplaced, there would not be an issue.  Stracey further assured plaintiff that he was not firing her.  Otherwise, Stracey never asked plaintiff for her side of the story during this meeting.

27.     That on or about Sunday night, April 19, 2015, Stracey telephoned plaintiff at home and told plaintiff it looked as though he was going to have to terminate her.  In doing so he asked plaintiff to come into work Monday.  With permission, plaintiff reported to work Tuesday, April 21, 2015 at which time Stracey indeed terminated plaintiff.  In doing so, Stracey again told plaintiff that she was being terminated for what she said in the cafeteria.

28.     That Scott, Crawford, and/or Etheridge were not disciplined or terminated.

**FOR A FIRST CAUSE OF ACTION:**
**WRONGFUL TERMINATION**
**IN VIOLATION OF PUBLIC POLICY**

29. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 28 hereinabove as fully as if set forth verbatim.

30. That there is a clear and strong mandate of public policy in this state, by and through *S.C. Code Ann.* § 16-17-560, that an employer shall not discharge a citizen from employment because of political opinions or the exercise of political rights and privileges guaranteed by the South Carolina Constitution.

31. That defendant violated this clear and strong mandate of public policy by terminating plaintiff from at-will employment because plaintiff expressed her political opinions and because plaintiff exercised her political rights and privileges guaranteed to her by the South Carolina Constitution - namely, freedom of speech.

32. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks the costs and disbursements of this action and prejudgment interest.

33. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the rights of the plaintiff and, therefore, plaintiff is entitled to recover punitive damages from the defendant.

## FOR A SECOND CAUSE OF ACTION:
## VIOLATION OF TITLE VII
## RACE DISCRIMINATION
## (TERMINATION)

34. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 33 hereinabove as fully as if set forth verbatim.

35. That at all relevant times as defined by Title VII, defendant employed fifteen (15) or more employees and, thus, is covered by and otherwise subject to Title VII.

36. That plaintiff is Caucasian.

37. That at all times plaintiff performed her job duties at defendant in a manner that met defendant's legitimate expectations.

38. That defendant terminated plaintiff.

39. That defendant terminated plaintiff under circumstances that give rise to an inference of race discrimination - namely, defendant did not terminate African-American employees who engaged in the same alleged behavior as plaintiff.

40. That alternatively, defendant replaced plaintiff with someone outside of plaintiff's protected class and/or the position remained open.

41. That defendant terminated plaintiff because of plaintiff's race and, therefore, defendant has purposefully violated Title VII.

42. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

43. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff and, therefore, plaintiff is entitled to recover punitive damages from the defendant.

**FOR A THIRD CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. §1981
RACE DISCRIMINATION
(TERMINATION)**

44. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 43 hereinabove as fully as if set forth verbatim.

45. That plaintiff is Caucasian.

46. That at all times plaintiff performed her job duties at defendant in a manner that met defendant's legitimate expectations.

47. That defendant terminated plaintiff.

48. That defendant terminated plaintiff under circumstances that give rise to an inference of race discrimination - namely, defendant did not terminate African-American employees who engaged in the same alleged behavior as plaintiff.

49. That alternatively, defendant replaced plaintiff with someone outside of plaintiff's protected class and/or the position remained open.

50. That defendant terminated plaintiff because of plaintiff's race and, therefore, defendant has purposefully violated 42 U.S.C. §1981.

51. That defendant terminated plaintiff because of plaintiff's race and thereby purposefully violated 42 U.S.C. §1981 by impairing the terms of plaintiff's employment contract with defendant, including, but not limited to, the making, performance, modification

9

and termination of said contract and the enjoyment of all benefits, privileges, terms and conditions of the said contractual relationship.

52. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

53. That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff and, therefore, plaintiff is entitled to recover punitive damages from the defendant.

WHEREFORE, plaintiff prays for the following relief against defendant:

(a) As to plaintiff's First Cause of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the costs and disbursements of this action, prejudgment interest, and for such other and further relief as the court deems just and proper;

(b) As to plaintiff's Second and Third Causes of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological

harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the costs and disbursements of this action, including reasonable attorney's fees, prejudgment interest, and for such other and further relief as the court deems just and proper.

                          HITCHCOCK & POTTS

                          By: *s/A. Christopher Potts*
                          Federal ID No.:  5517
                          31 Broad Street (P.O. Box 1113)
                          Charleston, SC 29401 (29402)
                          Telephone:  (843) 577-5000
                          Fax:  (843) 722-8512
                          E-Mail:  hitchp@bellsouth.net
                          *Attorneys for the Plaintiff*

Charleston, South Carolina
November 3, 2015