IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KIMBERLY COLLINS,<br><br>                Plaintiff,<br><br>v.<br><br>CHARLESTON PLACE, LLC,<br>d/b/a BELMOND CHARLESTON PLACE,<br><br>                Defendant. | C. A. No: 2:15-cv-4465-PMD-BM |

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
### MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant and files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. Defendant feels compelled to file this Reply to refocus the analysis of the parties and the Court on the only questions that are actually relevant to deciding this motion: whether there is any evidence in the record that would allow a jury to conclude that Defendant discriminated against Plaintiff on the basis of her race or discharged Plaintiff from employment in violation of public policy. Because the answer to those questions is a resounding "no," Plaintiff cannot survive summary judgment on her claims of race discrimination and wrongful termination in violation of public policy, and the Court must grant Defendant's Motion for Summary Judgment.

### I.    Plaintiff Fails to Address the Fact that She Was Replaced By Another Caucasian

Although she spends thirty-two pages of her Response arguing why her reverse race discrimination claim should not be summarily dismissed, Plaintiff fails to address the most significant fact of all: Plaintiff was replaced by another Caucasian. (Dkt. No. 25-5 (Def.'s Answer to Int. 15); Dkt. No. 25-1 (Pl. Dep. at 86).) This fact is dispositive of Plaintiff's claim

for race discrimination.  The claim fails on this basis alone, and Defendant is entitled to summary judgment.  *See Patterson-Womble v. Mabus*, No. 2:11-cv-834-RMG-BHH, 2013 WL 12148124, at *3 (D.S.C. Jan. 4, 2013) (Report & Recommendation), *adopted in relevant part*, 2013 WL 12148743, at *2 (D.S.C. Feb. 7, 2013) (granting the defendant's motion for summary judgment on the race discrimination claim, finding "that Plaintiff is unable to satisfy the fourth element of the *McDonnell Douglas* test, which requires a showing that she was replaced by a person outside Plaintiff's protected class. Here, Plaintiff, an African American female, was replaced by an African American female"); *see also Gregg-Wilson v. EFC Trade, Inc.*, No. 3:12-cv-2923-TLW, 2013 WL 5231489, at *4 (D.S.C. Sept. 13, 2013), *appeal dismissed by* 557 F. App'x 244 (Feb. 28, 2014) (per curiam); *Garrow v. Economos Props., Inc.*, 406 F. Supp. 2d 635, 640 (E.D. Va. 2005), *aff'd*, 242 F. App'x 68 (4th Cir. 2007).

## II.     Plaintiff's Pretext Arguments Are Moot

In support of her argument that her termination was pretext for race discrimination, Plaintiff asserts that Mr. Stracey did not get Plaintiff's "side of the story" (Resp. at 23, 30) and that she was terminated for voicing her political opinions while African Americans (Mr. Scott and Ms. Etheridge) who engaged in the same activity were not. (*Id.* at 28-29.)[1]  Plaintiff also

---

[1] Plaintiff also asserts Mr. Scott was treated more favorably than Caucasian employees and cites several reasons, including that Mr. Scott was not terminated after another employee reported that Mr. Scott might have had a firearm in the workplace in violation of the hotel's Firearms Policy, whereas a Caucasian employee ("Employee Y") was terminated for having a handgun at work. (Resp. at 14, 17.)  Plaintiff neglects to mention that the reason Mr. Scott was not suspended or terminated was that, after an investigation, Defendant was unable to substantiate the allegation that Mr. Scott had a firearm in the hotel.  (Etheridge Dep. at 107, attached hereto as Ex. A; Stracey Dep. at 120.)  Further, because Defendant found there was confusion about its policy, it did not discipline Mr. Scott, but instead reviewed the policy with all employees and instituted a zero-tolerance policy going forward from that point.  (Stracey Dep. at 119-20, attached hereto as Ex. B.)  The incident in which a Caucasian employee was terminated for having a firearm at

2

asserts there was "pressure on Stracey to get rid of Caucasian employees" (*id.* at 32), but she provides no citation in support of this contention. Nor could she, as there is no such evidence in the record, and in fact, Mr. Stracey testified to the contrary:

> Q: Do you recall telling [Plaintiff] during that telephone call on Sunday night, April 19, 2015, that things were not going well due to pressure that you were getting?
>
> A: No. What I said were things were not going well because of all the people that have complained.
>
> Q: Did you tell her at any point in time during that telephone call you were getting pressure to terminate her?
>
> A: A. No. No. I was -- I was -- there were many people that I was talking to that were involved that were trying to help me make the decision.
>
> . . .
>
> Q: Leon [Scott] was putting some pressure on you in some shape or form to fire Kim, wasn't he?
>
> A: No. Leon did not put any pressure on me. I wouldn't let him put any pressure on me.

(Stracey Dep. at 191, 201 (Dkt. No. 25-3).)[2]

Plaintiff's pretext arguments and misstatements of the record are of no matter. Because Plaintiff was replaced by another Caucasian, she cannot establish a *prima facie* case of discrimination. Therefore, all of her arguments that Defendant's actions were pretext for discrimination are moot and must be disregarded by the Court. *See Barber v. Columbia Coll.*, No. 3:05-cv-03405-MBS, 2007 WL 2891657, at *5 n.8 (D.S.C. Sept. 28, 2007) ("Plaintiff's

---

work is distinguishable from Mr. Scott's situation because the Caucasian employee admitted to having a firearm at work. (Stracey Dep. at 132 (Ex. B).)

[2] In another example of Plaintiff's misrepresenting the record in order to support her arguments, Plaintiff unequivocally avers "[d]uring the investigation, Scott told Stracey that he wanted Collins fired." (Resp. at 12 (citing Stracey Dep. at 201).) However, this is not supported by the record. (Stracey Dep. at 201.)

3

objections regarding pretext are moot because the court finds she failed to make her prima facie case."). As Plaintiff knows, the majority of Defendant's executives – including her boss (the decision-maker) – are also Caucasian.[3] This fact weighs further against her claim of reverse race discrimination. *See Collins v. Network Exp., Inc.*, No. 4:07-1564-RBH, 2008 WL 4280382, at *4 (D.S.C. Sept. 12, 2008) (citing *Love v. Alamance Cnty. Bd. of Educ.*, 757 F.2d 1504 (4th Cir. 1985)).

### III.     Defendant's Treatment of "Employee X" Is Distinguishable

Plaintiff cites to "Employee X" as an African American employee who was treated more favorably than Plaintiff, since Employee X "received two (2) written warnings[4] and then a final written warning and suspension before her termination[,]" whereas Plaintiff was suspended and terminated for her first offense. (Resp. at 16-17.) Employee X's situation is distinguishable from Plaintiff's because, whereas Plaintiff aggressively confronted three high-level hotel managers, Employee X's conduct was directed toward her co-workers. (Dkt. No. 28-11 at 17.) Plaintiff's first instance of misconduct was inappropriate and insubordinate, and so Mr. Stracey had no choice but to terminate Plaintiff's employment. (Stracey Dep. at 189, 201.) Conversely, there is no evidence that Employee X's first instance of confrontational conduct (or second, for that matter) was directed toward her superiors.

---

[3] Three of the four executives to whom Plaintiff reported are Caucasian. The only non-Caucasian of the four is Mr. Scott.

[4] The two written warnings "Employee X" received in 2011 were not for confrontational behavior but, rather, for violations of the hotel's gratuity policy and vacation policy. (Dkt. No. 28-11 at 18-19.)

4

### IV.     **Plaintiff's Assertions that She Was Terminated for Expressing Her Political Opinions Are Nothing More Than Speculation and Are Insufficient to Defeat Defendant's Motion for Summary Judgment**

Plaintiff's attempt to salvage her wrongful termination claim is based solely on her argument that S.C. Code Ann. § 16-17-560 "expresses a clear mandate of public policy in this State and that violation of the statute gives rise to a cause of action for wrongful termination in violation of public policy." (Resp. at 33.)  However, Plaintiff addresses only half of the necessary argument.  Even assuming that a termination in violation of S.C. Code Ann. § 16-17-560 constitutes a wrongful termination in violation of public policy, Plaintiff has failed to establish that her termination from employment violated the statute.  All of the record evidence establishes that Mr. Stracey decided to terminate Plaintiff's employment because Mr. Matesi, Ms. Etheridge, Mr. Scott, and Mr. Crawford all told Mr. Stracey the same thing: that Plaintiff had exhibited insubordinate and unacceptable behavior in the employee cafeteria on April 13, 2015.  (Stracey Dep. at 178, 201; Matesi Aff. ¶¶ 7-12.)

Plaintiff asserts she "was not disruptive or unprofessional in delivering her message." (Resp. at 34.)  However, the record evidence establishes Plaintiff knew she had committed a terminable offense with respect to her conduct in the employee cafeteria on April 13, 2015, as evidenced by her immediate confession to Mr. Matesi following the confrontation, looking for reassurance that she would not be in the trouble in which she reasonably expected she had landed herself.  Clearly, in confronting her superiors, Plaintiff knew she had done wrong.

Further, Mr. Stracey's decision was not based on the content of Plaintiff's tirade.  The record establishes Plaintiff did not deny the allegations of Plaintiff's inappropriate conduct raised by the other four witnesses, and that Mr. Stracey knew only what had been reported to him: namely, that Plaintiff had exhibited unacceptable behavior toward her superiors.  (Stracey Dep. at 178, 180-82, 193, 201; Matesi Aff ¶¶ 7-12.)  Additionally, despite Plaintiff's unsupported

5

assertions to the contrary, the record evidence affirmatively establishes that it was her "totally unacceptable" <u>conduct</u> – as opposed to the <u>content</u> of her speech – that led Mr. Stracey to terminate her employment. (Stracey Dep. at 180-81, 183.)[5] Because the evidence affirmatively establishes that Plaintiff was terminated for her conduct and not "because of political opinions," Defendant's conduct could not have violated S.C. Code Ann. § 16-17-560. Therefore, her claim for wrongful termination in violation of public policy warrants dismissal.

## V.     Conclusion

Plaintiff was replaced by another Caucasian employee, and so her race discrimination claim fails as a matter of law. Further, there is no genuine issue of material fact as to the reason for the termination of Plaintiff's employment: Plaintiff was terminated for her <u>conduct</u> in the employee cafeteria on April 13, 2015, <u>not</u> because of the content of her speech on that day. Based upon these facts and an application of the law set forth in this Reply and Defendant's Motion for Summary Judgment and Memorandum in Support thereof, Defendant is entitled to summary judgment on Plaintiff's claims.

---

[5] Plaintiff cites to an e-mail sent by Mr. Scott in support of her argument that it was "what she said" that led to her suspension and termination. (Resp. at 11.) However, Mr. Scott did not make the decision to suspend or terminate Plaintiff. That was Mr. Stracey's decision alone. (Stracey Dep. at 185; Etheridge Dep. at 159.) And Mr. Stracey did not receive pressure from Mr. Scott to make the decision. (Stracey Dep. at 201.)

Dated this 2nd day of March 2017.

    Respectfully submitted,

    *s/Luci L. Nelson*_____

    L. Gray Geddie
    Fed. I.D. No. 1020

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
The Ogletree Building
300 North Main Street, Suite 500 (29601)
Post Office Box 2757
Greenville, SC  29602
Telephone:     864.271.1300
Facsimile:     864.235.8806
gray.geddie@ogletreedeakins.com

    Luci L. Nelson
    Fed. I.D. No. 10341

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART
211 King Street, Ste. 200
Post Office Box 1808 (29402)
Charleston, SC 29401
Telephone:     (843) 853-1300
Facsimile:     (843) 853-9992
luci.nelson@ogletreedeakins.com

    *Attorneys for Defendant*

7