**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| KIMBERLY COLLINS, ) | Civil Action No.:  2:15-cv-4465-PMD-BM |
| ) | |
| Plaintiff, ) | |
| ) | **PLAINTIFF'S REPLY TO DEFENDANT'S** |
| vs. ) | **OBJECTIONS TO THE MAGISTRATE** |
| ) | **JUDGE'S REPORT AND** |
| CHARLESTON PLACE, LLC, ) | **RECOMMENDATION** |
| d/b/a BELMOND CHARLESTON PLACE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The plaintiff, by and through undersigned counsel, hereby replies to Defendant's Objections to the Magistrate Judge's Report and Recommendation as follows:

The Magistrate Judge ruled that plaintiff's state law claim for wrongful termination in violation of public policy should be <u>dismissed without prejudice</u> to allow plaintiff to refile in state court.  As plaintiff argues in her original Response to Defendant's Motion for Summary Judgment, plaintiff urges the court to rule on the claim and to deny Defendant's Motion for Summary Judgment on the said claim.  The court should deny Defendant's Motion for Summary Judgment as to plaintiff's state law claim for wrongful termination in violation of public policy on the following grounds:

An at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the employee in violation of a clear mandate of public policy.  *Barron v. Labor Finders of SC,* 393 S.C. 609, 614, 713 S.E.2d 634, 637 (2011).  The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law.  *Id.*  However, the public policy claim is not limited to these situations.  An at-will

1

employee may have a cause of action even if the discharge itself did not violate criminal law or the employer did not require the employee to violate the law. *Barron,* 393 S.C. at 614-615, 713 S.E.2d at 637.

The determination of what constitutes public policy is a question of law for the courts to decide. *Barron*, 393 S.C. at 617, 713 S.E.2d at 638. Once a public policy is established by the court, the jury determines the factual question of whether the employee's termination was in violation of public policy. *Id.*

Here, Collins invokes *S.C. Code. Ann.* § 16-17-560 as the source of public policy. That statute is found in Chapter 17 of Title 16 and is entitled "Offenses Against Public Policy." The statute makes it a crime to "…discharge a citizen from employment…because of political opinions or the exercise of political rights and privileges guaranteed…by the constitution and laws of the United States or by the constitution and laws of this State." Our Supreme Court has already held that this very statute expresses a clear mandate of public policy in this State and that violation of the statute gives rise to a cause of action for wrongful termination in violation of public policy. *Culler v. Blue Ridge Elec. Coop.,* 309 S.C. 243, 422 S.E.2d 91 (1992) ("we believe [the] prohibition of retaliatory discharge in violation of a clear mandate of public policy of this State extends at least to legislatively defined "crimes against public policy.") In *Culler,* the Supreme Court held that, if the plaintiff was discharged because he refused to contribute to a political action fund, he would have a cause of action for wrongful discharge in violation of public policy under *S.C. Code Ann.* § 16-17-560 (1976).

Thus, according to the ordinary meaning of the words in the statute, the reason for plaintiff's termination (firing plaintiff for expressing political opinions) is itself a violation of criminal law. Based upon the above authority, this court can easily make the determination as a matter of law that *S.C. Code Ann.* § 16-17-560 constitutes a strong and clear mandate of public

2

policy in this State, more specifically, that it is against the public policy of this State for an employer to terminate an employee for expressing political opinions in the workplace. With the public policy established, it now becomes a jury issue as to whether defendant violated the public policy in terminating plaintiff. There is certainly enough evidence on this point to create issues of fact.

To be sure, Collins was terminated for expressing her political opinions in the cafeteria. While the statute does not define "political opinions," *Black's Law Dictionary* defines the term "political" as:

> **Pertaining or relating to the policy or the administration of government, state or national. Pertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government...***Black's Law Dictionary*, 5th Ed. (1979).

Given this definition, it is clear that Collins was expressing her political opinions in the cafeteria when she made remarks about President Obama and race relations under his administration, the Walter Scott shooting, and how the North Charleston Police Department handled the situation, and the Ferguson, Missouri shootings, among other topics.

Defendant argues plaintiff was not fired for her speech, but for the disruptive way in which she expressed her opinions. However, there is plenty of evidence that plaintiff was not disruptive or unprofessional in delivering her message. Instead, there is compelling evidence that defendant fired plaintiff for **what** plaintiff said, not how she said it. This evidence includes the following:

> ❖ Collins denies she was aggressive or unprofessional during the incident. Instead, Collins testified that she was calm, not yelling, not pacing, and that she did not point her finger or raise her voice. (Ex. 6. Plf. depo. pp. 41, 43). In fact, Collins states she was shocked at Scott and Etheridge's demeanor during the exchange. *Id.*;

❖ Scott admits that Collins did not use profanity and did not point her finger at him. (Ex. 5, L. Scott depo. pp. 107-108). Etheridge also admits Collins did not use profanity or touch her or strike her or even bend over and point her finger in her face during the incident. (Ex. 3. C. Etheridge depo. pp. 143-144);

❖ Scott's email to Casselli and Etheridge the day after the incident in the cafeteria provides more evidence that Collins did not act aggressive or insubordinate in the lunchroom. (Ex. 2, P. Stracey depo. exhibit 27 thereto). Careful review of Scott's email shows he did not complain about Collins' behavior or how she delivered the message. Instead, Scott's email complains about the content of the message or **what** Collins said. To this end, in the email Scott states "**What she said** was not only offensive and wrong…" and "**What she said** was despicable, distasteful…." In forwarding the email to Stracey, Scott stated "Even I was surprised at **what she was spewing out;**"

❖ According to Collins, during her suspension and termination, Stracey did not bring up any allegation of aggressive behavior in the lunchroom. Instead, he told Collins she was being suspended and fired because, given race relations in the Charleston area, he could not have anyone in his office expressing political opinions to managers in the cafeteria. (Ex. 6, Plf. depo. pp. 80, 95; Ex. 7, Plf. Aff. para 21). For his part, Stracey admits that during plaintiff's suspension and termination he told her he could not have someone representing the office as an Executive Secretary walking around making judgments on behalf of the office. (Ex. 2, P. Stracey depo. pp. 187-188). Indeed, defendant did not raise allegations about plaintiff's **behavior** in the cafeteria until after it received plaintiff's demand letter in June of 2015 and then conducted its investigation the following month, July 2015. To this point, the evidence that defendant shifted its reason for terminating plaintiff from what she

4

said in the cafeteria to how she said it is further evidence of pretext. *EEOC v. Sears Roebuck and Co.,* 243 F.3d 846, 853 (4th Cir. 2001) (an employer's offer of different and arguably inconsistent explanations for termination is evidence of pretext); *Dennis v. Columbia Colleton Med. Ctr. Inc.,* 290 F.3d 639, 647 (4th Cir. 2002) (an employer's inconsistent explanation for its employment decisions are probative of pretext);

❖ Defendant did not get Collins' side of the story before terminating her. *Nemeth v. Citizens Fin. Group, Inc.,* 2011 U.S. Dist. LEXIS 68122 at *32 (E.D. Mich. 2011) (terminating 25-year employee with an untarnished employment history without hearing her side of the story is evidence of pretext); *Reese v. Barton Healthcare Sys.,* 693 F.Supp.2d 1170, 1184-1185 (E.D. Cal. 2010) (suspending plaintiff without getting her side of the story is evidence of pretext);

❖ Defendant terminated plaintiff without following its own discipline policy, without going through its diversity committee, and without involving Casselli in the investigation. Casselli testified that defendant follows a progressive discipline policy for all but the most serious offenses. According to Casselli, an employee is required to receive a first written warning, a second written warning, and then a three-day suspension before termination. Casselli felt she was required to follow this discipline policy. Casselli also testified she is typically involved in investigations at the hotel and that it was unusual that she was not involved in plaintiff's. (Ex. 4, J. Casselli depo. pp. 20-22, 28, 101-102). Stracey testified to the mandatory nature of defendant's progressive discipline policy stating that he felt required to follow it, and that defendant had to have good cause to fire an employee. (Ex. 2, P. Stracey depo. pp. 80-87). Defendant certainly followed its discipline policies "to the T" in dealing with Employee X, an African-American. Yet defendant fired plaintiff, a long-time employee of almost thirty (30) years with no prior discipline, on her first offense without a verbal warning, written

>  warning or suspension and without going through its diversity program. It also fired plaintiff without involving its Human Resource Director in the investigation leading up to the discharge. *Mohammed v. Cent. Driving Mini Storage, Inc.,* 128 F.Supp. 3d 932, 952-953 (E.D. Va. 2015) (failure of defendant to follow formal or even informal progressive discipline is evidence of pretext); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 355 fn. 29 (5th Cir. 2005) (even though internal progressive discipline policy is not mandatory and plaintiff is an employee at will, failure to follow discipline policy is still evidence of pretext where policy states it should be followed in most circumstances); *Goudeau v. Nat'l Oilwell Varaco, LP,* 793 F.3d 470, 477 (5th Cir. 2015) (when employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to an inference of pretext).

Defendant next argues that private employers are not constrained by First Amendment concerns-that employees at private companies have no First Amendment rights. Our state criminal laws say otherwise. The statute at issue is very clear that private employers cannot terminate employees for expressing political opinions or exercising their rights under the State or United States constitutions. Defendant also argues employers are required to enact workplace rules which encourage safe, productive and discrimination-free environments and that the criminal statute relied upon by plaintiff is at odds with such rules. That is not the case. The statute here does not protect threatening or discriminatory behavior-only political expression. This is not a case where Collins threatened anyone (like Scott allegedly did) or made racial remarks (again, like Scott allegedly did). Collins did not threaten to punch anyone or say she hated African-Americans. If an employee made hateful racial remarks or threatened violence, that speech would clearly not be protected under the statute. Finally, defendant's reliance on *Dixon v. Coburg Dairy, Inc.,* 330 F.3d 250 (4th Cir. 2003) is entirely misplaced. First,

the decision is a federal case that was reversed. *Dixon v Coburg Dairy, Inc.,* 2004 U.S.App. LEXIS 13783 (4th Cir. 2004). Plus, defendant relies upon a concurring/dissenting opinion from the reversed decision. Thus, the case defendant relies upon has absolutely no precedential value. And, the plaintiff in *Coburg* never claimed he was fired for expressing "political opinions" as Collins does here. Instead, he raised a First Amendment claim relying on the part of the statute forbidding termination for exercising political rights and privileges guaranteed by the constitutions. *Dixon* 330 F.3d at 261. Thus, the *Dixon* court analyzed the plaintiff's claim looking at an entirely different section of the criminal statute than the section at issue here.

Nonetheless, after reconsidering the matter, plaintiff believes this court could uphold the Magistrate Judge and dismiss the claim without prejudice to refile in state court - especially if the court upholds the Report and Recommendation which dismisses plaintiff's Title VII and § 1981 claims. To this point, the precise issue in the case is a novel one and such issues are best decided in light of the testimony to be adduced at trial. *See Garner v. Morrison Knudsen Corp.,* 318 S.C. 223, 456 S.E.2d 907 n. 3 (1995); *Keiger v. Citgo,* 326 S.C. 369, 482 S.E.2d 792 (Ct. App. 1997). Moreover, to maintain such a claim, the plaintiff cannot have an existing statutory remedy. *Barron*, 393 S.C. at 615, 713 S.E.2d at 637. Thus, if plaintiff's federal claims are dismissed with prejudice - which they should not be - then the plaintiff will be left without a statutory remedy, and her state court claim will be especially suited for adjudication in state court.

## CONCLUSION

Based upon the above, plaintiff prays that the Magistrate Judge's Report and Recommendation be reversed; that this court deny Defendant's Motion for Summary Judgment on all of plaintiff's claims; alternatively, plaintiff prays that, if the court upholds the dismissal of

7

plaintiff's federal claims under Title VII and § 1981, that the court dismiss plaintiff's state court claim without prejudice to file in state court.

                                                HITCHCOCK & POTTS

                                                By:  s/A. Christopher Potts
                                                Federal ID No.:  5517
                                                31 Broad Street (P.O. Box 1113)
                                                Charleston, SC 29401 (29402)
                                                Telephone:  (843) 577-5000
                                                Email:  hitchp@bellsouth.net
                                                *Attorneys for the Plaintiff*

Charleston, South Carolina
April 13, 2017