**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Kimberly Collins,           ) | |
|                     Plaintiff,    ) | C.A. No.: 2:15-cv-4465-PMD-BM |
| v.                          ) | **ORDER** |
| Charleston Place, LLC d/b/a ) | |
| Belmond Charleston Place,   ) | |
|                     Defendant.    ) | |
| _____) | |

This employment dispute is before the Court on United States Magistrate Judge Bristow Marchant's Report and Recommendation ("R & R") (ECF No. 30). In his R & R, the Magistrate Judge recommends the Court grant Defendant Charleston Place, LLC's motion for summary judgment (ECF No. 25) as to Collins' two federal claims and dismiss her state-law claim without prejudice. Both Collins and Charleston Place object to the R & R. (ECF Nos. 32 & 33.) For the following reasons, the Court overrules both sides' objections and disposes of Collins' claims in the manner the Magistrate Judge recommends.

## BACKGROUND

Collins is suing Charleston Place, which operates a hotel, over its April 2015 decision to fire her as a disciplinary measure. Collins, who is Caucasian, claims Charleston Place violated 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981 because her race motivated its decision to fire her. She also claims Charleston Place violated South Carolina law by firing her because of her political opinions and because she expressed those opinions in the workplace.

Charleston Place denies Collins' accusations. It contends Collins lost her job by being rude, disrespectful, and insubordinate to her superiors.

Following discovery, Charleston Place moved for summary judgment on all three of Collins' claims. After the parties briefed the motion, the Magistrate Judge prepared his R & R. In the R & R, the Magistrate Judge recommended granting summary judgment on Collins' two federal claims because Collins has failed to demonstrate a genuine issue of material fact on a key element of her claims. As for the state-law claim, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction and dismiss the claim without prejudice so that Collins may sue in state court.

Both sides objected to the R & R. Collins objected to the Magistrate Judge's analysis of her federal claims. Charleston Place objected to the Magistrate Judge's recommendation to dismiss Collins' state-law claim. Each side responded to the other's objections. With Charleston Place's motion and the objections now fully briefed, this matter is ripe for consideration.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court must conduct a de novo review of any portion of the R & R to which a timely, specific objection is made, and the Court may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.*

## DISCUSSION

The Court addresses the objections according to the type of claim involved.

### I.     Collins' Federal Claims

Collins' Title VII claim and her § 1981 claim both turn on the same allegation: that Charleston Place engaged in racial discrimination. Plaintiffs asserting such claims may defeat

2

summary judgment motions either by presenting direct evidence of racial discrimination in the firing or by presenting indirect evidence of discrimination that satisfies the framework the Supreme Court laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *E.g.*, *Shun-Lung Chao v. Int'l Bus. Mach. Corp.*, 424 F. App'x 259, 260 (4th Cir. 2011) (per curiam); *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 718 (D.S.C. 2014); *see also Lewis v. Cent. Piedmont Cmty. Coll.*, 689 F.2d 1207, 1209 n.3 (4th Cir. 1982) (stating the *McDonnell Douglas* framework applies to claims brought under Title VII and under § 1981).

Collins has not offered any direct evidence of discrimination.  She has instead focused on the *McDonnell Douglas* framework, which has three steps.  *Guessous v. Fairview Prop. Investments, LLC*, 828 F.2d 208, 216 (4th Cir. 2016).  First, the plaintiff must establish a *prima facie* case of discrimination.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). To establish a *prima facie* case of racially discriminatory employee discipline, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and "(4) other employees who are not members of the protected class were retained under apparently similar circumstances."  *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).  Second, after the plaintiff establishes a *prima facie* case, the defendant must produce evidence of a legitimate, non-discriminatory reason for discharging the employee.  *McDonnell Douglas*, 411 U.S. at 802.  Finally, if the defendant meets that burden, the plaintiff must then come forward with evidence that the defendant's proffered reasons "were not its true reasons, but were a pretext for discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  At that third step, the plaintiff's burden to

demonstrate pretext merges with her ultimate burden of persuading the court that she has been the victim of intentional discrimination. *Burdine*, 450 U.S. at 256.

In this case, the Magistrate Judge stopped his analysis at step one. Although he determined that Collins has met her burden of production for the first three prongs of the *prima facie* case, he also determined that Collins has failed to demonstrate a genuine issue of material fact for the fourth prong. Collins' objections relate to that latter determination.

The Court need not address Collins' objections. Even if she has met her burden of production for all prongs of the first *McDonnell Douglas* step, she has not done so for the third.

Charleston Place asserts it fired Collins because of her unprofessional behavior—namely, exhibiting rudeness, insubordination, and disrespect towards her superiors. Evidence in the record supports that position. The burden therefore shifts back to Collins to come forward with evidence that would enable a reasonable jury to decide both that the Charleston Place's statement of why it fired her was false, and that discrimination was the real reason it fired her. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (citation omitted). She must prove both because "[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original); *see also id.* at 524 (stating proof that the employer's proffered reason for firing the plaintiff "is unpersuasive, or even obviously contrived, does not necessarily establish" that the employer engaged in unlawful discrimination).

In *Reeves*, the Supreme Court stated that, "[i]n appropriate circumstances," a plaintiff can satisfy this dual burden of production with the evidence of her *prima facie case* and "sufficient evidence . . . that the employer's asserted justification is false." *Reeves*, 530 U.S. at 148. One of the key premises for its holding was that "once the employer's justification has been eliminated,

discrimination may well be the most likely alternative explanation." *Id.* at 147. For that reason, the Supreme Court cautioned that "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148. Rather than attempt to catalog all such instances, *see id.* at 149, the Supreme Court suggested courts consider "a number of factors" on that issue, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law," *id.* at 148–49; *see also E.E.O.C. v. Siemens Maint. Servs., LLC*, No. 3:07-cv-1769-JFA, 2009 WL 363213, at *4–5 (D.S.C. Feb. 10, 2009) (applying the *Reeves* factors to motion for summary judgment). Guided by those factors, the Court considers the record.

Collins was fired after a conversation she had at the hotel with three of her superiors, who were African-American. During that exchange, Collins expressed her opinions on a Black Lives Matter protest that had just taken place in the hotel, the recent police shooting of an African-American in nearby North Charleston, the prior year's police shooting of another African-American in Missouri and its aftermath, diversity training that Charleston Place employees had attended several months earlier, and the state of race relations during the Obama presidency. Her comments were not well-received.

The person who made the decision to fire Collins was Paul Stracey, a Caucasian for whom Collins worked directly. Stracey was out of town the day of the incident. After he returned, he spoke with each of the three African-American employees. According to Stracey, the supervisors told him the substance of Collins' remarks but also described Collins as acting

5

belligerently, yelling at them and wagging her finger in one person's face. Stracey also heard from Geno Matesi, a Caucasian manager with whom Collins had spoken just after the incident. Matesi told Stracey that Collins had come to him, described what had occurred, and expressed fear that she would be fired. In his deposition, Stracey testified that the account of the incident Matesi relayed to him matched what Stracey had heard from the other three employees. Stracey never got an account of the incident directly from Collins.

Based on the information he received, Stracey testified, he decided to fire Collins because she was hostile and disrespectful to superiors. Stracey denied, however, that the substance of Collins' comments played any role in his decision. He testified he was focused not on *what* she said, but *how* she said it.

Ample evidence, however, indicates that Stracey *did* base his decision on what Collins said. For example, before Stracey fired Collins, he suspended her. Collins testified in her deposition that when Stracey suspended her, he said that, as his assistant, she could not express her political opinions in the hotel. Stracey corroborated that testimony in his own deposition, saying he told Collins "I can't have someone representing the office, you know, I can't have someone that is an extension of our office walking around making, you know, having a—you know, judgments on behalf of my office." (Def.'s Mem. Supp. Mot. Summ. J., Ex. B, Tr. of Stracey Dep., ECF No. 25-3, at p. 187.) Additionally, one of the African-Americans involved in the incident was Leon Scott, who Collins assisted.[1] Two days after the incident, Scott sent Stracey an email describing some of Collins' comments and calling "[w]hat she said" "offensive and wrong," "intended to hurt," and "despicable, distasteful, embarrassing, and hurtful." (Def.'s Mem. Supp. Mot. Summ. J., Ex. J, Scott email, ECF No. 25-11 (emphasis added).) Stracey had that email before he took action against Collins. When viewed in the light most favoring Collins,

---
1. Collins assisted several management-level employees, including Scott and Stracey.

6

*see Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990), the record does tend to show that Charleston Place's explanation for firing her is pretext—but not for racial discrimination. Rather, once Charleston Place's explanation is disregarded, "the most likely alternative explanation," *Reeves*, 530 U.S. at 147, is that Stracey fired Collins for expressing her views on sensitive topics. That might be content or even viewpoint discrimination. However, neither Title VII nor § 1981 prohibit such conduct.

In contrast, the record does not support more than a remote possibility that Stracey fired Collins because of her race. First, the fact that Stracey and Collins are both Caucasian cuts heavily against her assertions. *See, e.g.*, *Miller-Jones v. Prince George's Cmty. Coll.*, No. 16-2005, 2017 WL 2462791, at *1 (4th Cir. June 7, 2017) (per curiam) ("An assertion of pretext is less believable" where the decision-makers consist "individuals of the same protected class as the plaintiff."); *Coggins v. Gov't of D.C.*, 173 F.3d 424, 1999 WL 94655, at *4 (4th Cir. 1999) (unpublished table decision) ("The fact that both Krull and Gibbons, first and third in Coggins' chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 198 (E.D. Va. 2010) ("[A]n allegation of discrimination loses persuasiveness when a key player in the disciplinary process falls within the same protected class as the plaintiff."). Second, Stracey and Collins worked closely together for twenty years. They had, as Stracey put it, an "amazing" working relationship, and he consistently gave her soaring performance reviews. When Stracey fired Collins, they cried and hugged. The Court fails to see how, on this record, a rational jury could determine that Stracey would cause himself personal anguish, and deny himself the aid of a long-trusted assistant, because of the color of Collins' skin (which matched his own). Finally, Charleston Place replaced Collins with another Caucasian female. *See Miles v. Dell, Inc.*, 429 F.3d 480, 488 (4th Cir. 2005) ("[W]hen someone within her

7

protected class is hired as a replacement, that fact ordinarily gives rise to an inference that the defendant did not fire the plaintiff because of her protected status."). Even assuming Collins established a *prima facie* case, the potential inference of discrimination to be drawn from the comparator evidence on which she has based her case is quite weak. Particularly when viewed in conjunction with the evidence that Collins' opinions motivated her firing, the above facts collectively blunt any such inference to the point that no reasonable jury could conclude that Charleston Place's proffered reason for firing Collins is pretext for racial discrimination.

Collins maintains she has presented a strong case of pretext. She first stresses that, contrary to Charleston Place's assertions, she was not aggressive or loud during the incident. However, whether she in fact acted as Charleston Place alleges is not the central question. Rather, what matters is what information Stracey had before him when he fired Collins. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (internal quotations omitted)). As the Magistrate Judge noted in his R & R, nothing in the record indicates Stracey decided to fire Collins knowing she may have acted calmly while expressing her opinions. To the contrary, everyone who described the incident to Stracey indicated Collins used disrespectful gestures and tones during the incident.

Collins counters that Stracey would have heard differently if he had asked for Collins' side of the story. She contends that Stracey's failure to interview her was one of several deviations from Charleston Place's standard procedures for investigating and punishing employee misconduct and that those deviations prove pretext. The Court disagrees. First, as to the failure to interview, it is not at all clear that company policy required Stracey to hear from Collins before he acted. *Cf. Palomino v. Concord Hosp. Enters. Co.*, 126 F. Supp. 3d 647, 655

8

(D.S.C. 2015) (rejecting plaintiff's argument that failure to interview her demonstrated pretext; she offered no evidence that company was required to do so).  Regardless, Stracey testified he *did* get Collins' version of events through Matesi, who claimed to be relaying what Collins told him (Matesi).  While the better course might have been to speak directly with Collins, nothing in the record indicates Stracey had reason to doubt the accuracy of Matesi's report.  *See E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not . . . the function of this court to second guess the wisdom of business decisions.").

Second, and more broadly, "courts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext."  *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 421 (D.S.C. 2014); *see also Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment to terminate him, failed to interview witnesses or the plaintiff himself, failed to follow its own policy, and failed to consult with the plaintiff's supervisor before deciding to terminate him); *Butler v. Berkeley Cty. Sch. Dist.*, No. 2:98-cv-369-11, 2000 WL 33158371, at *5 (D.S.C. Mar. 29, 2000) ("[E]ven if the defendants did not follow all the procedures, the mere fact that an employer did not follow its own procedures does not suggest that an employer was motivated by illegal discriminatory intent." (citation omitted)), *aff'd*, 238 F.3d 410 (4th Cir. 2000) (unpublished table decision).  To the extent any of Charleston Place's other purported deviations could suggest dissembling, that evidence would not allow a jury to conclude Collins' race, rather than her opinions, was what really motivated Stracey to fire her.

Finally, Collins asserts Charleston Place changed its story after it fired her. According to Collins, Charleston Place did not cite disrespect or insubordination as the reason for firing her until after her attorney sent it a letter accusing it of political and racial discrimination; before that, the only explanation she had received was Stracey's comment that he could not have her expressing political opinions. "The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext." *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 647 (4th Cir. 2002) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)). *Dennis* and *Sears Roebuck*, on which Collins relies, are distinguishable. Each involved a company offering multiple post-hoc explanations that, although inconsistent with one another, would have individually been legitimate reasons for the company's action. *See Dennis*, 290 F.3d at 646; *Sears Roebuck*, 243 F.3d at 852–53. Here, however, Charleston Place has offered just one legitimate, post-hoc rationale; meanwhile, the explanation that Stracey contemporaneously gave Collins might not be legitimate under state law. *See* S.C. Code Ann. § 16-17-560 (making it a misdemeanor to fire someone because of her political opinions or for exercising constitutionally protected political rights and privileges); *Culler v. Blue Ridge Elec. Coop., Inc.*, 422 S.E.2d 91, 93 (S.C. 1992) (holding people fired in violation of section 16-17-560 have a civil cause of action against their employer for wrongful discharge). *But see Vanderhoff v. John Deere Consumer Prods., Inc.*, No. 3:02-cv-685-22, 2003 WL 23691107, at *2 (D.S.C. Mar. 13, 2003) (holding the statute "extends only to matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote" and does not cover all opinion and expression on matters of public concern that enjoy constitutional protection). While a jury might reasonably cast aside Charleston Place's later-offered

insubordination explanation as suspiciously convenient, the record presented here would not similarly enable the jury to conclude that Charleston Place may have falsely exposed itself to civil and criminal liability in state court in order to mask racial discrimination.

In sum, Collins has not presented a genuine issue of material fact as to the third *McDonnell Douglas* step. Consequently, Collins' objections are overruled as immaterial.

As indicated above, the ultimate question in an employment discrimination case is whether the employer intentionally discriminated against the plaintiff on a prohibited basis. *Reeves*, 530 U.S. at 146. Indeed, the *McDonnell Douglas* framework "exists solely to facilitate determination" of that question. *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991); *see also Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) (reminding courts considering summary judgment motions to "resist the temptation to become so entwined in the intricacies" of the framework lest they lose focus on whether the plaintiff has demonstrated a triable issue of fact on "the existence of discrimination *vel non*" (citations and internal quotation marks omitted)). Although the Court has applied the *McDonnell Douglas* framework to this record, it has done so while keeping that ultimate question in mind. After careful review of the record and the applicable law, the Court concludes Collins has failed to establish a "genuine, triable issue," *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986), as to whether Charleston Place discriminated against her on the basis of her race. Therefore, the Court grants Charleston Place summary judgment on Collins' two federal claims.

## II.     Collins' State-Law Claim

The Court has supplemental jurisdiction over Collins' state-law claim. *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The

Magistrate Judge recommends the Court exercise its discretion and dismiss Collins' one remaining claim without prejudice so she can pursue it in state court.

Charleston Place objects.[2] It contends this Court should dispose of the claim because it is already familiar with the case and because the parties will incur additional costs by litigating in state court. The Court is not persuaded.

In *United Mine Workers v. Gibbs*, the Supreme Court stated:

> [P]endent jurisdiction. . . . lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. 715, 726 (1966). "Thus, the court should weigh the interests of comity and federalism to determine 'the most appropriate course of action.'" *Doe v. Georgetown Cty. Sch. Dist.*, No. 2:14-cv-1873-DCN, 2015 WL 5923610, at *9 (D.S.C. Oct. 9, 2015) (quoting *Clinton v. Cty. of York*, 893 F. Supp. 581, 588 (D.S.C. 1995)).

Federalism concerns weigh particularly heavy here. Collins' state-law cause of action is for wrongful discharge in violation of public policy. *See Lawson v. S.C. Dep't of Corr.*, 532 S.E.2d 259, 260–61 (S.C. 2000) (describing that cause of action's basic parameters). She premises her claim on South Carolina Code section 16-17-560, which criminalizes firing someone "because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution and laws of [South Carolina]." Collins alleges she was terminated because she

---

2. Originally, both sides objected: Charleston Place wanted the Court to grant summary judgment on the claim, and Collins wanted this Court to hold a trial on it. Later, however, Collins agreed that if this Court grants summary judgment on her federal claims, her state claim should proceed in state court.

12

"expressed her political opinions and because [she] exercised her political rights and privileges guaranteed to her by the South Carolina Constitution—namely, freedom of speech." (Compl., ECF No. 1, at ¶ 31.) Thus, Collins' South Carolina claim is itself doubly premised on South Carolina law. Moreover, it is not clear which, if any, of Collins' opinions might constitute political opinions under the statute or whether discussing them with coworkers is a protected political right or privilege under the state constitution. It is the state court system's province to answer those questions of state law, if necessary.[3] Therefore, the Court overrules Charleston Place's objection and adopts the Magistrate Judge's recommendation to dismiss Collins' South Carolina cause of action without prejudice.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the parties' objections are **OVERRULED** and that the Magistrate Judge's recommended disposition of this case is **ADOPTED**. It is, therefore, further **ORDERED** that Charleston Place's motion for summary judgment is **GRANTED IN PART**, as to Collins' federal claims, and that Collins' remaining state-law claim is **DISMISSED** without prejudice.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 26, 2017**
**Charleston, South Carolina**

---

3.  As discussed at length above, it is also unclear whether Collins was fired for what she said or instead merely how she said it.

13